1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

ELIZABETH SUTTON,                          CASE NO. 1:11-cv-01426-LJO-JLT

12
                        Plaintiff,          **ORDER ON DEFENDANTS' MOTION**
13         vs.                              **FOR SUMMARY JUDGMENT** (Doc. 16)

14   MARK DEROSIA and
     CITY OF DELANO,
15
                        Defendants.
16
     _____/
17

18                              **I. INTRODUCTION**

19          Plaintiff Elizabeth Sutton ("plaintiff") was previously employed by the City of Delano ("the

20   City") as an Administrative Secretary for its police department and supervised by the police chief, Mark

21   DeRosia ("Chief DeRosia").   Plaintiff commenced the instant lawsuit against the City and Chief

22   DeRosia (collectively "defendants") for retaliation she allegedly experienced for taking medical leave

23   and filing a complaint with California's Department of Fair Employment & Housing ("DFEH").  Now

24   before the Court is defendants' motion for summary judgment.  Defendants argue that they are entitled

25   to summary judgment based on plaintiff's failure to exhaust her claims.  Defendants also contend that

26   plaintiff cannot show that she was retaliated against or that her position was eliminated because she took

27   leave or filed a complaint with the DFEH.  Defendants further assert that Chief DeRosia cannot be

28   individually liable.  Finally, defendants request summary judgment on their affirmative defense of

                                              1

workers' compensation preemption.  Plaintiff argues that summary judgment is inappropriate because triable issues exist.  Having considered the parties' arguments and submissions, defendants' motion is GRANTED in part, and DENIED in part.[1]

## II. BACKGROUND

**A. Facts**

On August 18, 2008, the City hired plaintiff to fill the Administrative Secretary position in its police department.  (Doc. 16-3, ¶ 1).  After plaintiff was hired, she was supervised by Chief DeRosia and worked in an office adjacent to his.  (Doc. 16-3, ¶ 2).

### 1. Work Performance

On August 5, 2009, plaintiff received a memorandum of counseling[2] from Chief DeRosia for making a false complaint.  (Doc. 16-5, p. 67).  The memorandum provides that plaintiff told Chief DeRosia that another employee, Eddie Aguil ("Mr. Aguil"), called her a "fat ass."  (*Id.*).  When Chief DeRosia approached Mr. Aguil about the comment, he denied it and when Chief DeRosia discussed the incident with plaintiff she explained that Mr. Aguil never made the derogatory comment.  (*Id.*).  Plaintiff signed the document as required but next to her signature she stated that she was misunderstood and working under a "hostile work environment."  (*Id.* at p. 68).

On August 24, 2009, plaintiff received her first performance evaluation by Chief DeRosia.  (Doc. 17-2).  Plaintiff received mostly "above average" and "outstanding" marks with only two "satisfactory" ratings in accuracy and ability to get along with fellow employees.  (Doc. 17-2).  She did not receive any "marginal improvement needed" or "unsatisfactory" ratings.  (Doc. 17-2).  The comment section of plaintiff's evaluation specifically provides that plaintiff "is professional and strives to do the best job possible . . . She is well organized and is able to manage her time in a manner that is effective and efficient, and completes most tasks before due dates or deadlines."  (Doc. 17-2).  The evaluation

---

[1] Omission of reference to any evidence, argument, or objection in the discussion below should not be construed to the effect that the Court did not consider the evidence, argument, or objection.  The Court carefully considered the parties' positions and reviewed and applied all evidence deemed admissible, material, and appropriate.  The Court does not rule on general evidentiary matters in a summary judgment context, unless otherwise noted.

[2] The memorandum specifically provides that it is not disciplinary in nature and that a copy will remain in plaintiff's file and may be used for evaluation purposes if similar events occur during the present rating period.  (Doc. 16-5, p. 68).

1  concludes by stating that "[o]verall, [plaintiff] has performed at a satisfactory level during this rating

2  period.  She should be proud of the work she performs, and the amount of work she completes each

3  day." (Doc. 17-2).

4  **2. Illness and Leave**

5  On September 11, 2009, plaintiff learned that she had cancerous cells that needed to be removed.

6  (Doc. 18, ¶ 4).  The cells were removed on November 13, 2009.  (Doc. 16-3, ¶ 3).  Despite plaintiff's

7  doctor's orders to remain off work for three weeks, plaintiff returned to work on November 18, 2009.

8  (Doc. 17-22, ¶ 7; Doc. 18, ¶ 5).  On November 23, 2009, plaintiff suffered complications from the

9  procedure.  (Doc. 18, ¶ 6).  Thus, the following day plaintiff called in sick (Doc. 18, ¶ 6) and made an

10 appointment with her doctor  (Sutton Depo., p. 139).  The doctor informed plaintiff that she needed to

11 take time off from work but that it was okay for her to take her pre-planned seven day vacation cruise

12 to Mexico with her husband.  (Doc. 18, ¶ 7; Sutton Depo., p. 139).  The doctor also told plaintiff that

13 she should not work until December 14, 2009.  (Doc. 17-8).

14 **3. Return to Work**

15 Plaintiff returned to work on December 14, 2009, as directed by her doctor.  (Doc. 16-3, ¶ 4).

16 The day plaintiff returned, Chief DeRosia circulated a memo in which he explained that Robin Moniz

17 ("Ms. Moniz") and Mr. Aguil would be moving into the office adjacent to his and that plaintiff would

18 be moving to Ms. Moniz's former office.  (Doc. 16-3, ¶ 5).  The memo further provided that plaintiff

19 would begin reporting to Liz Salim ("Ms. Salim") (Doc. 16-3, ¶ 6) and that plaintiff would be taking

20 over payroll duties.

21 On December 28, 2009, plaintiff received a "Notice of Proposed Discipline - 40 hour suspension

22 without pay" from Chief DeRosia.[3]  (Doc. 16-3, ¶ 7).  The document provides that plaintiff failed to

23 follow Chief DeRosia's directions prior to taking planned vacation leave, failed to perform assigned

24 duties, and failed to follow the City's Internet Use Policy.  (Doc. 17-12).  The document explains that

25 plaintiff failed to follow directions prior to taking leave by failing to: (1) mail a purchase agreement and

26 escrow instructions to a title company; (2) properly complete payroll; (3) pay bills; (4) process completed

27

28  _____

[3] After an appeals' process, plaintiff's suspension was reduced from 40 hours to two days.  (Doc. 16-3, ¶ 12).

warrant requests; and (5) arrange for a co-worker to cover her duties while she was on vacation.  (Doc. 16-6, p. 79 ¶ 6; Doc. 17-12, p. 1-2).  The notice further provides that plaintiff failed to perform assigned duties by failing to mail a letter to the parole hearing board regarding the police department's objection to the release of a prisoner and for failing to perform requested research associated with the letter.  (Doc. 17-12, p. 2).  The notice also provides that plaintiff failed to follow the City's Internet Use Policy by excessively using the internet to access non-work related cites.[4]  (*Id.*).

On February 4, 2010, a written letter of reprimand was issued to plaintiff because she worked unauthorized overtime.  (Doc. 16-6, p. 7).  On the same day, plaintiff filed a grievance with the City against Chief DeRosia and Ms. Salim.  (Doc. 16-6, p. 49).  Plaintiff alleged that Chief DeRosia began harassing and discriminating against her after she informed him of her cancer diagnosis.  (Doc. 16-6, p. 49; Doc. 18 ¶ 13).  On April 7, 2010, plaintiff left work due to stress and did not return to work for the remainder of her employment with the City.  (Doc. 16-3, ¶ 14).

**4. Workers' Compensation and First DFEH claim**

Plaintiff filed a workers' compensation claim on July 19, 2010, in which she alleged that she suffered "continuous trauma due to stress and stress caused from hostile environment caused injury to psyche, sleep apnea, and anxiety."  (Doc. 16-6, p. 56).  On January 3, 2011, plaintiff filed a complaint with the DFEH.  (Doc. 16-3, ¶ 16; Doc. 16-5, p. 79).  Plaintiff alleged that she was harassed for taking leave under the California Family Rights Act ("CFRA").  (*Id.*).

**5. Position Elimination**

In or around June 2011, two City Council members acting as a budget review committee met with Chief DeRosia to discuss what positions could be eliminated from the police department.  (Doc. 16-6, ¶ 12).  Chief DeRosia suggested the elimination of the Community Services Officer, Emergency Services Specialist, and the Administrative Secretary positions.  (*Id.*)  Chief DeRosia suggested the Administrative Secretary position because it had not been filled with a permanent employee since plaintiff left on April 7, 2010.  (*Id.*).  On July 22, 2011, the City eliminated twelve positions as part of a citywide budget cut.  (Doc. 18, ¶ 15).  Three of the twelve positions eliminated were with the police

---

[4] The notice of proposed discipline provides that during a 704 hour work period, plaintiff spent approximately 600 hours on the internet.  (Doc. 17-12, p. 2).

department (*id.*) which included the Administrative Secretary position previously held by plaintiff (Doc. 16-3, ¶ 17).

### 6. Second DFEH Claim

On August 24, 2011, plaintiff commenced the instant action with this Court. (Doc. 1).  After commencing the instant action, plaintiff filed an additional complaint with the DFEH on July 11, 2012. (Doc. 17-18).  Plaintiff alleged that she was retaliated against by having her position eliminated after she filed her initial complaint with the DFEH. (Doc. 17-18).  Plaintiff requested an immediate right to sue letter and received it.  (Doc. 17-18, p. 4).

**B. Procedural History**

In plaintiff's complaint she alleged the following claims: (1) retaliation and position elimination in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 (against all defendants); (2) retaliation and position elimination in violation of the CFRA, Cal. Govt. Code § 12945.2 (against the City); (3) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12940 (against the City); and (4) retaliation, in violation of Cal. Labor Code § 1102.5 (against the City). (Doc. 1).  Subsequent to filing the complaint, plaintiff abandoned her CFRA position elimination and California Labor Code claims.  (Doc. 17, p. 7).

Now before the Court is defendants' motion for summary judgment filed on July 20, 2012. (Doc. 16).  Defendants argue that they are entitled to summary judgment on plaintiff's first claim for relief because plaintiff failed to exhaust her FMLA claim, Chief DeRosia cannot be individually liable under the FMLA, and plaintiff cannot show that the City retaliated against her because she took FMLA leave. With regard to plaintiff's second claim for relief, the City argues that she cannot show that the City retaliated against her for taking CFRA leave.  The City further argues that it is entitled to summary judgment on plaintiff's third claim for relief because she failed to exhaust her FEHA claim and cannot show that the City eliminated her position because she filed a complaint with the DFEH.  Finally, Defendants request summary judgment on their fifth affirmative defense of workers' compensation preemption as it relates to plaintiff's emotional distress claims.  Plaintiff filed an opposition to defendants' motion for summary judgment (Doc. 17) to which defendants replied (Doc. 20).  On August 23, 2012, the Court found this matter suitable for decision without oral argument and took the matter

1    under submission, pursuant to Local Rule 230(g).  (Doc. 21).

2                                    **III. LEGAL STANDARD**

3           Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

4    and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

5    movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A material fact is one which

6    may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

7    dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of

8    the nonmoving party.  *Id.*

9           A party seeking summary judgment "always bears the initial responsibility of informing the

10   district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

12   demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

13   323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an

14   issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

15   the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue

16   as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

17   by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing

18   *Celotex*, 477 U.S. at 323).

19          If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

20   material fact by presenting *affirmative evidence* from which a jury could find in [its] favor."  *FTC v.*

21   *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original).  The nonmoving party must go

22   beyond the allegations set forth in its pleadings.  *See* FED. R. CIV. P. 56(c).  "[B]ald assertions or a mere

23   scintilla of evidence" will not suffice.  *Stefanchik*, 559 F.3d at 929.  Indeed, the mere presence of "some

24   metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment.

25   *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record

26   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

27   'genuine issue for trial.'"  *Id.* at 587 (citation omitted).

28          In resolving a summary judgment motion, "the court does not make credibility determinations

                                                       6

1    or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.  Rather, "[t]he evidence of the [nonmoving

2    party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S.

3    at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual

4    predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602

5    F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

6                                              **IV. DISCUSSION**

7    **A. FMLA Claim: Exhaustion**

8              Defendants argue that plaintiff cannot bring a claim under the FMLA because she did not file a

9    complaint with or receive a right to sue letter from the Equal Employment Opportunity Commission

10   ("EEOC").  "Congress authorized the Department of Labor to promulgate regulations implementing the

11   FMLA." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1123 n.9 (9th Cir. 2001).  Thus,

12   "[u]nlike other employment discrimination statutes, the FMLA is not enforced by the [EEOC] or subject

13   to the procedures and remedies of Title VII. [Rather], [i]t is enforced by the Wage and Hour Division

14   of the Department of Labor and does not require a plaintiff to exhaust administrative remedies."

15   *Bonzani v. Shinseki*, 2011 WL 4479758, *5 (E.D. Cal. Sept. 26, 2011).  An employee seeking to enforce

16   the FMLA has the choice of filing a complaint with the Secretary of Labor or filing a private lawsuit.

17   29 C.F.R. § 825.400.  There is no exhaustion requirement.  Thus, defendants' motion for summary

18   judgment on plaintiff's FMLA claim on the ground that plaintiff failed to exhaust her administrative

19   remedies is DENIED.

20   **B. FMLA Claim: Individual Liability**

21             Defendants request summary judgment on plaintiff's FMLA claim against Chief DeRosia.  They

22   argue that individual defendants may not be sued under the FMLA for actions that occurred while acting

23   within the scope of their employment because there is no supervisory liability under the FMLA.

24   Defendants further argue that as a public official, Chief DeRosia is not included in the definition of the

25   term "employer" under the FMLA.

26             The Ninth Circuit has yet to address the issue of whether a supervisor can be individually liable

27

28

                                                      7

as an employer under the FMLA.[5]  The circuit courts that have addressed the issue are split.  The Third, Fifth, and Eighth Circuits have held that public employees can be individually liable under the FMLA, while the Sixth and Eleventh Circuits have held that public employees are not individually liable under the FMLA.  *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012); *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002); *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999).  In the Ninth Circuit, one district court has held that individuals are subject to liability under the FMLA, *see Mercer v. Borden*, 11 F. Supp. 2d 1190 (C.D. Cal. 1998), and another specifically held that public employees can be individually liable under the FMLA, *Morrow v. Putnam*, 142 F. Supp. 2d 1271 (D. Nev. 2001).

Without controlling authority on the issue, this Court looks to the plain language of the statute.  *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989).  "[W]here . . . the statute's language is plain, the sole function of the court[] is to enforce it according to its terms."  *Id.* (internal quotation marks omitted).  The plain meaning of the statute "should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *Id.* at 242 (internal quotation marks omitted).

The FMLA prohibits any employer from interfering with an employee's exercise of her right to take leave.  29 U.S.C. § 2615(a).  The FMLA defines the term employer as follows:

> (4) Employer
> (A) In general
> The term "employer" --
> > (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> > (ii) includes –
> > > (I) *any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer*; and
> > > (II) any successor in interest of an employer;
> > (iii) includes any "public agency", as defined in section 203(x) of this title; and
> > (iv) includes the Government Accountability Office and the Library of Congress.

---

[5]  The Ninth Circuit has stated in dicta however, that it agrees "with the other circuits that some supervisory employees can be sued as employers under the FMLA."  *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 872 (9th Cir. 2001) (supervisory employee of a state agency sued in her official capacity).

1    (B) Public Agency
     For purposes of subparagraph (A)(iii), a public agency shall be
2    considered to be a person engaged in commerce or in an industry or
     activity affecting commerce.

3

4    29 U.S.C. § 2611(4) (emphasis added).

5         A plain reading of the statute shows that individuals can be liable under the FMLA. The statute

6    explicitly states that the term employer includes "any person who acts, directly or indirectly in the

7    interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Thus,

8    an individual employee can be liable under the statute so long as he or she is acting in the interest of the

9    employer.

10        The Court's conclusion regarding the plain reading of the statute is bolstered by the similarity

11   between the definitions of the term "employer" under the FMLA and the Fair Labor Standard Act

12   ("FLSA"). The FLSA includes within the definition of employer "any person acting directly or

13   indirectly in the interest of an employer in relation to an employee and includes a public agency, but does

14   not include any labor organization (other than when acting as an employer) or anyone acting in the

15   capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). This similarity is

16   significant because the Ninth Circuit has held that "the definition of 'employer' under the FLSA . . . 'is

17   to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'"

18   *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th 1999) (quoting *Bonnette v. California Health &

19   Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). Thus, "[w]here an individual exercises control

20   over the nature and structure of the employment relationship, or economic control over the relationship,

21   that individual is an employer within the meaning of the [FLSA], and is subject to liability." *Id*. at 1012

22   (holding that evidence strongly supported the jury's determination that the Chief Operating Officer and

23   Chief Executive Officer were employers within the meaning of the FLSA).

24        The Department of Labor's implementing regulations for the FMLA provide additional support

25   for interpreting the statute as including individual liability.[6] The regulations provide:

26

27   _____

     [6] "Congress authorized the Department of Labor to promulgate regulations implementing the FMLA. 29 U.S.C. §
28   2654. The department's reasonable interpretations of the statute are therefore entitled to deference under *Chevron USA Inc.
     v. Natural Resources Defense Council*, 467 U.S. 837, 843-44 (1984)." *Bachelder*, 259 F.3d at 1123 n.9.

An "employer" includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees.   The definition of "employer" in section 3(d) of the [FLSA], 29 U.S.C. 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee.   As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of FMLA.

29 C.F.R. § 825.104(d).   Moreover, as acknowledged by the Third Circuit, "[i]n promulgating the regulations the Department of Labor responded to concerns of imposing individual liability under the FMLA by noting that the [FLSA] . . . which defines 'employer' similarly to the FMLA, already holds 'corporate officers, managers and supervisors acting in the interest of an employer . . . individually liable.'"   *Haybarger*, 667 F.3d at 414 (quoting Summary of Major Comments for the FMLA Regulations, 60 Fed. Reg. 2180, 2181 (Jan. 6, 1995)).   Accordingly, this Court holds that the plain language of the statute, the similarity between the definitions of employer in the FLSA and the FMLA, and the Department of Labor's implementing regulations for the FMLA show that an individual employee can be liable under the FMLA.

With regard to individuals employed by public agencies, this Court agrees with the Third Circuit that there is "no reason to distinguish between public agencies and private employers under the FMLA insofar as individual liability is concerned" in light of the FMLA's regulations.   *Id*. at 415.   The regulations provide that, "[e]mployers . . . include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency." 29 C.F.R. § 825.104(a).   Therefore, this Court holds that public employees can be individually liable under the FMLA.

Defendants rely on *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003), and an unpublished decision from this district, *McLaughlin v. Solano County*, 2008 WL 2977959 (E.D. Cal. Jul. 28, 2008), which relies on *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999), to support their argument that a public official cannot be an employer under the FMLA. This Court is unpersuaded by the reasoning used by the Sixth and Eleventh Circuits regarding this issue.

In *Mitchell*, the Sixth Circuit determined that the FMLA's individual liability provision does not extend to public agencies for three reasons. *Mitchell*, 343 F.3d at 832. First, the Sixth Circuit held that

1    a plain reading of the statute shows that individual liability does not extend to public agencies because

2    "[§] 2611(4)(A) segregates the provision imposing individual liability from the public agency provision."

3    *Id.* The Court disagrees with this interpretation of the text of the statute because as pointed out by the

4    Third Circuit, although there are ambiguities in the FMLA,

6    > the FMLA indicates a relationship between § 2611(4)(A)'s modifiers by stating
     > that the term "employer" "means" its definition in § 2611(4)(A)(i) and then
     > "includes" the provisions in § 2611(4)(A)(ii)-(iv). [*Modica*, 465 F.3d at 185.]
7    > Therefore, an "employer" "means any person engaged in commerce or in any
     > industry or activity affecting commerce who employs 50 or more employees"
8    > and "includes" both "any person who acts, directly or indirectly, in the interest
     > of an employer" and public agencies. *Id.* Because the definition of "employer"
9    > includes public agencies, and Congress provided that an employer may include
     > individuals, it plainly follows that an individual supervisor at a public agency
10   > may be subject to liability. *Id.*

11   *Haybarger*, 667 F.3d at 416.

12          Next, the Sixth Circuit reasoned that "an interpretation that commingles the individual liability

13   provision with the public agency provision renders [§ 2611(4)(B)] . . . superfluous." *Mitchell*, 343 F.3d

14   at 832. This reasoning is unpersuasive because when § 2611(4)(A)(iii)'s inclusion of public agencies

15   is interpreted as relating to § 2611(4)(A)(i)'s definition of an employer a presumption is created that

16   public agencies engage in commerce. *Haybarger*, 667 F.3d at 416. Thus, § 2611(4)(B) "relieves

17   plaintiffs of the burden of proving that a public agency is engaged in commerce." *Modica*, 465 F.3d at

18   186.

19          Finally, the Sixth Circuit concluded that the FMLA and FLSA should not be interpreted in the

20   same manner because "the FMLA adopts several of the FLSA's provisions [] [h]owever, in each instance

21   . . . the FMLA refers directly to the FLSA" and in this instance the FMLA merely provides a restatement

22   of the FLSA's provision. *Mitchell*, 343 F.3d at 831-32. "[T]he fact that Congress, in drafting the

23   FMLA, chose to make the definition of employer materially identical to that in the FLSA means that

24   decisions interpreting the FLSA offer the best guidance for construing the term employer as it is used

25   in the FMLA." *Modica*, 465 F.3d at 186 (quoting *Wascura*, 169 F.3d at 686) (internal quotation marks

26   omitted).

27          This Court is also unpersuaded by the reasoning used by the Eleventh Circuit in *Wascura*, 169

28   F.3d at 683. In *Wascura*, the Eleventh Circuit recognized the similarity between the definitions of the

term employer in the FMLA and FLSA and then looked to its FLSA decisions to determine whether the term employer includes a public official in his or her individual capacity. *Id*. at 685-86. Based on the reasoning used in its FLSA decisions, the Eleventh Circuit determined that an individual public official lacks sufficient control over an employee's employment to qualify as an employer. *Id*. at 686. This Court agrees that a public official must have control over the terms and conditions of an employee's employment to qualify as an employer[7] however, this Court sides with the Third Circuit in rejecting "a blanket rule that a public official in his or her individual capacity never has the requisite control to be an employer." *Haybarger*, 667 F.3d at 416 n.7. Moreover, as pointed out in *Morrow*, the Eleventh Circuit fails to "explain why public officials should be exempted from liability while managers in the private sector are not." *Morrow*, 142 F. Supp. 2d at 1275.

Accordingly, defendants' request for summary judgment on plaintiff's FMLA claim against Chief DeRosia on the ground that Chief DeRosia cannot be individually liable under the FMLA is DENIED.

## C. FMLA Claim: Merits

### 1. Mode of Analysis

As a preliminary matter, the parties disagree as to whether plaintiff's FMLA retaliation claim should be analyzed under the *McDonnell Douglas*[8] burden shifting framework or the negative factor test set forth in *Bachelder*, 259 F.3d at 1112. For the reasons set forth below, this Court construes plaintiff's retaliation claim as an interference claim and applies the negative factor test set forth in *Bachelder*.

In plaintiff's first claim for relief she alleges that Chief DeRosia retaliated against her when she returned from FMLA leave, in violation of 29 U.S.C. § 2615. Although plaintiff labels her claim as a retaliation claim, it is actually an interference claim.[9] The Ninth Circuit has explained that when "an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the

---

[7] *See e.g.*, *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (holding that "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability") (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (en banc)).

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9] The fact plaintiff mislabels her claim is of no import. *See Liu v. Amway Corp.*, 347 F.3d 1125, 1134 n.8 (9th Cir. 2003) (stating that defendant mistakenly claimed that plaintiff failed to raise an "interference" claim when plaintiff merely misidentified her interference claim as a "retaliation" and "discrimination" claim).

employer has interfered with the employee's FMLA rights."[10]  *Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) (quoting *Bachelder*, 259 F.3d at 1124).  Because plaintiff alleges that Chief DeRosia retaliated against her when she returned from FMLA leave, she has alleged an interference claim.

The Ninth Circuit has expressly rejected the application of the *McDonnell Douglas* burden shifting framework to FMLA interference claims and instead applies a negative factor test.  *Bachelder*, 259 F.3d at 1125; *Liu*, 347 F.3d at 1136.  Under the Department of Labor regulations, it is unlawful for an employer to "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  *Bachelder*, 259 F.3d at 1122 (quoting 29 C.F.R. § 825.220(c).  Thus, the Ninth Circuit has held that "if an employer uses an employee's taking of FMLA leave as a 'negative factor' in making 'adverse employment decisions,'. . . the employer interferes with the employee's exercise of FMLA rights." *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1159 (E.D. Cal. 2009) (relying on *Bachelder*, 259 F. 3d at 1122-23).  To prevail on an interference claim at trial, an employee must show, "by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in [an adverse employment decision].  She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125.  Accordingly, on summary judgment this Court must determine "whether there is a triable issue of material fact as to whether the FMLA leave taken by [plaintiff] was impermissibly considered as a factor in" the adverse employment actions she experienced. *Liu*, 347 F.3d at 1136.

### 2. Adverse Employment Action

Before the Court can apply the negative factor test to the facts of this case, the Court must first determine whether the adverse employment actions alleged by plaintiff are supported by sufficient admissible evidence and whether the treatment alleged constitutes adverse employment actions.

In plaintiff's opposition she argues that she suffered five adverse employment actions: (1) moved from a large office to a small office; (2) suspended without pay for two days; (3) disciplined for working unauthorized overtime; (4) given additional job duties; and (5) subjected to a hostile work environment.

---

[10] "In contrast, where an employee is punished for *opposing* unlawful practices by the employer, the issue then becomes one of discrimination and retaliation."  *Liu*, 347 F.3d at 1136 (emphasis in original).

Plaintiff's hostile work environment claim is comprised of thirteen alleged acts which, plaintiff argues, taken together constitute an adverse employment action. Defendants concede that acts (1) through (4) constitute adverse employment actions. However, with regard to plaintiff's hostile work environment claim, defendants argue that the alleged acts are either not supported by admissible evidence or do not constitute adverse employment actions. Both arguments will be discussed in turn.

Plaintiff's hostile work environment claim is comprised of the following alleged acts: (5a.) belittled in front of others; (5b.) denied a list of job duties; (5c.) required to review payables with Chief DeRosia; (5d.) staff were told plaintiff was secretly recording them; (5e.) monitored by other employees; (5f.) ignored by other employees at Chief DeRosia's direction; (5g.) denied access to Chief DeRosia's office; (5h.) blamed for dress code changes; (5i.) received voodoo curse; (5j.) ignored by Chief DeRosia; (5k.) reassigned to a new supervisor; (5l.) excluded from an administrative staff meeting; and (5m.) denied internet access.

Plaintiff fails to point to any evidence to support acts (5a.) through (5d.). These acts are alleged in plaintiff's complaint only. Because plaintiff bears the burden of establishing these acts for purposes of summary judgment, this Court declines to consider them. *See Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1377 & n.34 (E.D. Cal. 1995) (recognizing that "[o]n summary judgment, where our Local Rule 260 requires the parties to cite to evidentiary record, it is not the court's job to go sifting through depositions looking for evidence"); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

With regard to acts (5e.) through (5i.), defendants argue that these acts are not supported by admissible evidence. The Court agrees. Each act and the accompanying objections will be discussed in turn.

*(5e.) Monitored by Other Employees*.   In support of plaintiff's argument that she suffered an adverse employment action when she was monitored by other employees she presents the declaration of Robert Murillo ("Mr. Murillo"), her own declaration, and photocopies of a calendar. The City objects to Mr. Murillo's declaration in its entirety based on its assertion that Mr. Murillo lacks personal knowledge of the statement at issue and that the declaration consists of hearsay. Mr. Murillo's declaration provides in relevant part that "Jackie Ugali confirmed that [plaintiff] was being watched

1   more closely after her leave." (Doc. 17-25, ¶ 4).  Because Mr. Murillo did not have personal knowledge

2   as to whether plaintiff was being watched more closely after her leave and because his statements are

3   based on hearsay, the City's objections are SUSTAINED.

4        With regard to plaintiff's declaration, it provides that when she returned from leave, Ms. Ugali

5   monitored when she came to work, when she left, and the length of her breaks and lunches.  (Doc. 17-22,

6   ¶ 15:1-2).   Plaintiff's declaration further provides that she learned this information from other

7   employees.   (Doc. 17-22, ¶ 15:4).   The City objects to these statements on the grounds that the

8   statements are speculative, lack foundation, not based on personal knowledge, and based on hearsay.

9   Because plaintiff learned that she was being monitored from other employees her statement is not based

10  on personal knowledge and is based on hearsay.  Accordingly, the City's objections are SUSTAINED.

11       Finally, the City objects to the purported photocopies of Ms. Ugali's calendar.  (Doc. 17-15).

12  Relying on *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002), the City objects to this

13  evidence on the ground that it lacks foundation and constitutes hearsay.  Plaintiff attempts to authenticate

14  the calendar in her declaration however, because plaintiff's declaration testimony is based on hearsay

15  there is no way of knowing whether the calendar is what plaintiff claims it to be.  Accordingly, the City's

16  objections are SUSTAINED.

17       *(5f.) Ignored by Other Employees at Chief DeRosia's Direction*.  In support of plaintiff's

18  argument that she suffered an adverse employment action when Chief DeRosia told employees not to

19  talk to her, she presents Pamela Romero's ("Ms. Romero") declaration.  Ms. Romero's declaration

20  provides that in early 2010, her supervisor received an email from Chief DeRosia, which Ms. Romero

21  read, that instructed Ms. Romero's supervisor to advise Ms. Romero not to have contact with plaintiff.

22  (Doc. 17-26, ¶ 3).  The email further provided that if Ms. Romero did have contact with plaintiff, Ms.

23  Romero would receive a written reprimand.   (*Id*.).  The City objects to this portion of Ms. Romero's

24  declaration on the ground that it contains hearsay and is not the best evidence, pursuant to FED. R. EVID.

25  1002.  The City's best evidence objection is SUSTAINED.  Plaintiff has not submitted the email sent

26  to Ms. Romero's supervisor and the declaration is used to "prove the content of a writing."  *See Medina*

27  *v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1114 n.57 (C.D. Cal. 2007) (pregnant employee's declaration

28  that her supervisor sent her a number of emails designed to make her look bad was inadmissible under

15

1   the best evidence rule because employee did not submit the emails and her testimony was offered to

2   prove the content of the writings in question).

3       (5g.) *Denied Access to Chief DeRosia's Office*.   Plaintiff argues that she suffered an adverse

4   employment action when Chief DeRosia confiscated the keys to her old office and his office, changed

5   the locks on both doors, and placed an alarm on his door.   In plaintiff's opposition, she fails to point to

6   any evidence that shows that the keys to her office were confiscated, that DeRosia placed an alarm on

7   his door, or that the locks to her old office were changed.

8       In support of plaintiff's argument that Chief DeRosia confiscated the keys to his office and

9   changed the locks on his door, plaintiff points to her own declaration. (Doc. 17-22, ¶ 15a).  Relying on

10   FED. R. EVID. 402, the City objects to plaintiff's statement on the ground that it is irrelevant,

11   argumentative, and speculative.  "Evidence is relevant if: (a) it has any tendency to make a fact more or

12   less probable than it would be without the evidence; and (b) the fact is of consequence in determining

13   the action."  FED. R. EVID. 401.  Plaintiff's statement that her keys to Chief DeRosia's office were

14   confiscated and he changed the locks on his door does not make it more or less probable that she

15   suffered an adverse employment action because plaintiff's lack of access to Chief DeRosia's office was

16   not reasonably likely to impair plaintiff's job performance or prospects for advancement.  Accordingly,

17   the City's objection is SUSTAINED.

18       (5h.) *Blamed for Dress Code Changes*.   In support of plaintiff's argument that she suffered an

19   adverse employment action when Chief DeRosia blamed her for the elimination of dress down Fridays

20   she presents her declaration.  Plaintiff's declaration provides that within a month of her return from

21   leave, Chief DeRosia eliminated dress down Fridays and that she learned from other employees that

22   Chief DeRosia blamed her for the elimination. (Doc. 17-22, ¶ 14).  Pursuant to FED. R. EVID. 602, the

23   City objects to plaintiff's statement as speculative, lacking foundation, and lacking personal knowledge.

24   The City also objects to plaintiff's statement as hearsay.  "Generally, Rule 602 requires that a witness'

25   testimony be based on events perceived by the witness through one of the five senses . . . first-hand

26   observation is the most common form of personal knowledge."  *Los Angeles Times Comm., LLC v. Dept.*

27   *of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006).  Because plaintiff does not have first hand

28   knowledge that Chief DeRosia blamed the elimination of dress down Fridays on her, the City's objection

1    is SUSTAINED.

2        *(5i.) Recipient of Voodoo Curse.*   In support of plaintiff's argument that suffered an adverse

3    employment action when Mr. Aguil, a co-worker, placed a voodoo curse on her, she presents Ms.

4    Moniz's declaration which provides that Mr. Aguil told her that he created a voodoo doll of plaintiff and

5    placed a curse on her. (Doc. 17-24, ¶ 7). Ms. Moniz first saw the voodoo doll after plaintiff returned

6    from leave. (Doc. 17-24, ¶ 7). The City objects on the ground that these statements are irrelevant,

7    contain hearsay, and lack foundation. (Doc. 20-3, p. 5 ¶ 4). Whether Mr. Aguil created a voodoo doll

8    of plaintiff and placed a curse on her does not make it more or less probable that plaintiff suffered an

9    adverse employment action because she took medical leave. *See* FED. R. EVID. 401. Thus, the City's

10   relevance objection is SUSTAINED.

11       After excluding from consideration the acts unsupported by sufficient admissible evidence,[11] the

12   Court is left with the following four allegations: that plaintiff was (5j.) ignored by Chief DeRosia; (5k.)

13   reassigned to a new supervisor; (5l.) excluded from an administrative staff meeting; and (5m.) denied

14   internet access.   Plaintiff argues that these four acts constitute a hostile work environment and that a

15   hostile work environment is an adverse employment action.   Plaintiff's argument fails because these acts

16   are not "severe or pervasive enough to create an objectively hostile or abusive work environment."

17   *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Moreover, plaintiff alleges that her internet was

18   disabled in October 2009, which was before she took the FMLA leave at issue.  (Doc. 17-22, ¶ 5).

19       **3. Negative Factor Analysis**

20       Having narrowed plaintiff's adverse employment action allegations to four acts, this Court is left

21   to decide whether there is a triable issue regarding whether the FMLA leave plaintiff took was

22   impermissibly considered as a factor in Chief DeRosia's decision to (1) move her office, (2) suspend her,

23   (3) issue a written reprimand, and (4) give her additional job duties. *Liu*, 347 F.3d at 1136. Plaintiff has

24   presented evidence from which a reasonable trier of fact could conclude that Chief DeRosia took the fact

25   that plaintiff took FMLA leave into account when he made the above decisions.

26       To begin with, each of the above acts happened within temporal proximity to plaintiff's return

27

28       [11] That is, acts (5a.) through (5i.).

                                        17

from FMLA leave.  Plaintiff was assigned a smaller office and given additional job duties the day she returned from leave, she received notice of her suspension two weeks after her return, and received a written reprimand a little under two months after her return.  The temporal relationship is significant because the Ninth Circuit has held that the proximity in time between the taking of FMLA leave and an adverse employment action "provides supporting evidence of a connection between the two events." *Id*. at 1137.

In addition, the fact plaintiff was disciplined twice after her return from leave when her prior performance evaluation was positive in nature may create an inference of impermissible motivation.  In *Liu*, the Ninth Circuit determined that a "19% drop in overall score from [plaintiff's] former employee evaluation may . . . create an inference of impermissible motivation."  *Id*.  Here, although plaintiff received a memorandum of counseling for making a false complaint in August 2009, her August 24, 2009, annual performance evaluation shows that she received mostly "above average" and "outstanding" marks with only two "satisfactory" ratings in accuracy and ability to get along with fellow employees. (Doc. 17-2).  She did not receive any "marginal improvement needed" or "unsatisfactory" ratings.  (*Id*.). In addition, plaintiff received an "above average" rating in "complies with work instructions."  (*Id*.). Moreover, the comment section of plaintiff's evaluation specifically provides that she "is professional and strives to do the best job possible . . . She is well organized and is able to manage her time in a manner that is effective and efficient, and completes most tasks before due dates or deadlines."  (*Id*.). The evaluation concludes by stating that "[o]verall, [plaintiff] has performed at a satisfactory level during this rating period.  She should be proud of the work she performs, and the amount of work she completes each day."  (*Id*.).  These comments are a far cry from the written notice of suspension plaintiff received when she returned from medical leave.  The written notice provides that plaintiff failed to follow Chief DeRosia's directions prior to taking planned vacation leave, failed to perform assigned duties, and failed to follow the City's Internet Use Policy.  (Doc. 17-12).

Finally, Ms. Moniz's declaration provides that Chief DeRosia complained that plaintiff was "always gone and always sick" and that he constantly complained about plaintiff taking time off from work. (Doc. 17-24, ¶ 10).  The declaration further provides that Chief DeRosia complained that because

plaintiff was gone, other employees had to do her work.[12]  (*Id.*).  In addition, Ben Rutledge's ("Mr. Rutledge") deposition testimony provides that Chief DeRosia complained to him about Sam Castaneda, another employee, who took FMLA leave after the birth of his child.[13]  These comments coupled with the above identified evidence suggests that the adverse employment actions plaintiff experienced may have been tainted with Chief DeRosia's negative attitude towards the taking of FMLA leave.  *See Liu*, 347 F.3d at 1137 (holding that defendant's repeated denials of plaintiff's leave requests and comments about his increased workload suggest that the adverse employment action plaintiff experienced was tainted with defendant's negative attitude towards her leave).

Defendants' motion for summary judgment on plaintiff's interference claim under the FMLA is DENIED.

In plaintiff's complaint she also alleges that her position was eliminated because she took FMLA leave.  Defendants argue that because plaintiff took FMLA leave in November and December 2009, and her position was not eliminated until July 22, 2011, plaintiff cannot establish a causal link between the two events.  Plaintiff does not respond to defendants' argument in her opposition.  The Court is unaware of anything in the record which shows a genuine dispute of material fact regarding whether plaintiff's FMLA leave was impermissibly considered as a factor in the City's decision to eliminate the Administrative Secretary position.  Thus, defendants' motion for summary judgment on plaintiff's position elimination claim under the FMLA is GRANTED.

---

[12]  Defendants object to Ms. Moniz's statements on the ground that the statements contain hearsay and lack foundation.  The objections are OVERRULED.  Chief DeRosia's statements fall under the employee admission exception to the hearsay rule.  The employee admission exception requires that the statement be offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  FED. R. EVID. 801(d)(2)(D).  Ms. Moniz's declaration contains statements made by Chief DeRosia regarding the attendance record of one of his employee's and the effect the attendance record had on the rest of his employees' workload.  As chief of the police department, Chief DeRosia oversaw the operation of the police department and supervised plaintiff directly.  Thus, Chief DeRosia was commenting on a matter within the scope of his employment and his statement falls within the employee admission exception to hearsay.  With regard to defendants' lack of foundation argument, the objection is unpersuasive because Ms. Moniz was present when Chief DeRosia made the comments thus, her testimony is based on personal knowledge.  *See Los Angeles Times Comm., LLC*, 442 F. Supp. 2d at 886 ("first-hand observation is the most common form of personal knowledge").

[13]  Mr. Rutledge's deposition testimony specifically provides that Chief DeRosia stated, "'I can understand taking a couple weeks off when the baby is born, but,' you know, 'I don't understand taking months and months off.'" (Doc. 17-20, p. 11:17-20).

1    Defendants' motion for summary judgment on plaintiff's first claim for relief is GRANTED in

2    part, and DENIED in part.

3    **D. CFRA Claim: Mode of Analysis**

4        In plaintiff's second claim for relief, she alleges that she was retaliated against because she took

5    CFRA leave.  The parties disagree as to whether the claim should be analyzed under the *McDonnell*

6    *Douglas* burden shifting framework or the negative factor test set forth in *Bachelder*.

7        As discussed above, when an employee is subjected to "negative consequences . . . simply

8    because he has used FMLA leave," the Ninth Circuit labels these claims as interference claims and

9    analyzes them using the negative factor test.  *Bachelder*, 259 F.3d at 1124-25.  The Ninth Circuit has

10   extended this holding to CFRA "interference" claims as well.  *Liu*, 347 F.3d at 1132 n.4.  California

11   courts however, continue to label these claims as CFRA retaliation claims, *see Rogers v. County of Los*

12   *Angeles*, 198 Cal. App. 4th 480, 487-88 (Ct. App. 2011) (recognizing that CFRA retaliation claims are

13   "claims in which an employee alleges that she suffered an adverse employment action for exercising her

14   right to CFRA leave"), and apply the *McDonnell Douglas* burden shifting framework, *see Faust v.*

15   *California Portland Cement Co.*, 150 Cal. App. 4th 864, 885 (Ct. App. 2007).  Because the *McDonnell*

16   *Douglas* burden shifting framework is the more stringent standard and this Court would like to avoid

17   differing outcomes in federal versus state court, this Court will apply the *McDonnell Douglas* burden

18   shifting framework to plaintiff's CFRA retaliation claim.

19   **E. CFRA Claim: Direct Evidence**

20       Plaintiff argues that use of the *McDonnell Douglas* burden shifting framework is unnecessary

21   here because she has direct evidence of an improper motive.

22       "In employment discrimination cases . . . plaintiffs can prove their cases by direct or

23   circumstantial evidence."  *DeJung v. Superior Court*, 169 Cal. App. 4th 533, 549 (Ct. App. 2008).

24   When a plaintiff proffers circumstantial evidence, California courts apply the *McDonnell Douglas*

25   burden shifting framework.  *Id.*  The *McDonnell Douglas* test is inapplicable however, when a plaintiff

26   presents direct evidence of discrimination.  *Id.* at 550.  "Direct evidence is evidence which, if believed,

27   proves the fact of discriminatory animus without inference or presumption.  Comments demonstrating

28   discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship

20

between the comments and the adverse job action at issue." *Id*.

Plaintiff points to Ms. Moniz's declaration as direct evidence of discrimination. Ms. Moniz's declaration provides that Chief DeRosia constantly complained that plaintiff was "always gone and always sick." (Doc. 17-24, ¶ 10). The declaration further provides that Ms. Moniz often heard Chief DeRosia state that he did not like employees who took time off from work. (Doc. 17-24, ¶ 11). Although this evidence shows that Chief DeRosia disliked the fact that plaintiff took time off from work, there is no causal link between Chief DeRosia's comments and the alleged retaliation experienced by plaintiff. *Cf. id*. at 550-52 (causal relationship between animus and adverse employment action existed where chair of Executive Committee informed Commissioner that he could not return to a full-time position because the Committee wanted someone younger).

Plaintiff also points to the fact that Chief DeRosia:[14] (1) complained about Commander Ray taking time off from work, (2) complained about female employees becoming pregnant, (3) complained about a male employee who took leave for his wife's pregnancy, and (4) indicated to plaintiff that he gets rid of employees who become pregnant. There is no causal relationship between Chief DeRosia's comments and the alleged retaliation experienced by plaintiff. Thus, plaintiff has failed to present direct evidence of an improper motive.

**F. CFRA Claim: Merits**

Using the *McDonnell Douglas* burden shifting framework, the City argues that plaintiff cannot establish a prima facie case of retaliation. The City also asserts that it had legitimate, non-retaliatory reasons for its actions.

The elements of a retaliation claim under the CFRA are: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action . . . because of her exercise of her right to CFRA leave." *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (Ct. App. 2001).

---

[14] In § 5.1 of plaintiff's opposition she argues that she has direct evidence to support her CFRA claim and that the "direct evidence is noted above" and then highlights Ms. Moniz declaration. (Doc. 17, p. 22:6). The Court assumes that the "direct evidence []noted above" statement refers to the direct evidence identified in § 4.3 related to plaintiff's argument that direct evidence exists to support her FMLA claim. (Doc. 17, p. 13).

> Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation.

*Faust*, 150 Cal. App. 4th at 885 (internal quotation marks omitted).

**1. Prima Facie Case**

**a. Adverse Employment Action**

Plaintiff alleges the same five adverse employment actions in relation to her CFRA claim as she did for her FMLA claim, including the hostile environment claim comprised of thirteen acts. Because this Court has already determined that acts (5a.) through (5i.) are not supported by sufficient admissible evidence, there is no need for the Court to repeat its discussion of those allegations here. However, this Court will address the remaining four acts in plaintiff's hostile work environment claim, *i.e.*, the allegations that plaintiff was (5j.) ignored by Chief DeRosia; (5k.) reassigned to a new supervisor; (5l.) excluded from an administrative staff meeting; and (5m.) denied internet access.

As discussed above, plaintiff argues that the acts alleged in her hostile work environment claim, taken together constitute an adverse employment action. The Court construes plaintiff's hostile work environment claim as a "retaliatory course of conduct" claim as set forth in *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1058 (2005) (holding that a "series of separate retaliatory acts collectively may constitute and 'adverse employment action' even if some or all of the component acts might not be individually actionable"), and finds that plaintiff has failed to satisfy the adverse action element of her prima facie case with regard to her retaliatory course of conduct claim.

In *Yanowitz*, the California Supreme Court concluded that "the proper standard for defining an adverse employment action is the 'materiality' test, a standard that requires an employer's adverse action to materially affect the terms and conditions of employment." *Id.* at 1036.

> Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls

1    within the reach of [the FEHA].

2  *Id.* at 1054-55.  Where an "employee is affected by a series of employment actions, at least some of

3  which might not, in and of themselves, constitute a material change in the terms or conditions of

4  employment . . . it is appropriate to consider the plaintiff's allegations collectively under a totality of the

5  circumstances approach."  *McRae v. Dep't of Corr. Rehab.*, 142 Cal. App. 4th 377, 387-88 (Ct. App.

6  2006).

7    The four acts plaintiff complains of, "whether considered piecemeal or as part of a continuous

8  course of conduct, do[] not and cannot rise to the level of an actionable adverse action," *id.* at 390,

9  because the alleged acts did not materially affect the terms and conditions of plaintiff's employment,

10 *Yanowitz*, 36 Cal. 4th at 1036.  Plaintiff alleges that when she returned from leave Chief DeRosia refused

11 to talk to her and reassigned her to a new supervisor.  Chief DeRosia's alleged refusal to speak with

12 plaintiff does not constitute an adverse employment action "because an employer cannot force employees

13 to socialize with one another."  *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000); *see also*

14 *Strother v. S. California Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996) ("mere ostracism

15 in the workplace is not enough to show an adverse employment decision").  In addition, plaintiff's

16 reassignment to a new supervisor does not constitute an adverse employment action because there is

17 nothing to indicate that the reassignment was "reasonably likely to impair a reasonable employee's job

18 performance or prospects for advancement or promotion."  *Yanowitz*, 36 Cal. 4th at 1054-55; *see also*

19 *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 332 (5th Cir. 2009) (holding that reassignment to

20 "a new supervisor and given a heavier workload" did not constitute a materially adverse employment

21 action because the plaintiff "suffered no adverse impact").

22    With regard to plaintiff's allegation that she was excluded from an administrative staff meeting,

23 she points to Ms. Salim's deposition testimony which provides that plaintiff was excluded from one

24 administrative staff meeting.  According to Ms. Salim, the purpose of the meeting was to remind

25 employees to have confidence in the management team, *i.e.*, employees were reminded that if there was

26 an issue, management would take care of it.  (Doc. 17-21, p. 9:19-24).  Ms. Salim explained that plaintiff

27 was not invited to the meeting because the "issue" that employees were encouraged to let management

28

23

take care of was the alleged behavior of plaintiff.[15]   The fact that plaintiff was excluded from the meeting does not constitute an adverse employment action because the exclusion was not "reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." *Yanowitz*, 36 Cal. 4th at 1054-55; *Cf. Strother v. S. California Permanent Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996) (holding that plaintiff proffered sufficient facts to establish that she suffered an adverse employment action because she was excluded from meetings, seminars, and positions that would have made her eligible for salary increases).

Finally, plaintiff's allegation that her internet was disabled in October 2009, did not materially affect the terms and conditions of her employment because her internet connection was re-enabled. (Doc. 17-12, p. 2-3).   Accordingly, this act cannot be viewed as materially affecting the terms and conditions of her employment. *See Yanowitz*, 36 Cal. 4th at 1054 ("[m]inor or relatively trivial adverse actions . . . that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment").

The acts, supported by admissible evidence, alleged in plaintiff's retaliatory course of conduct claim, considered collectively, did not materially affect the terms, conditions, or privileges of her employment. *Id.* at 1052.   Therefore, plaintiff has failed to satisfy the adverse action element of her prima facie case with regard to her retaliatory course of conduct claim.

### b. Causal Link

The City contends that plaintiff has failed to show a causal link between the adverse employment actions and the exercise of her right to CFRA leave.

In order to establish a prima facie claim of retaliation under the CFRA plaintiff must show that she "suffered an adverse employment action . . . *because of* her exercise of her right to CFRA leave." *Dudley*, 90 Cal. App. 4th at 261 (emphasis added).   "[T]he causal link element may be established by an inference derived from circumstantial evidence." *McRae*, 142 Cal. App. 4th at 388.   Thus, "[a]

---

[15] Ms. Salim explained that when a receptionist refused to comply with plaintiff's request to call Animal Control to ask them a question regarding their time sheets, plaintiff told the receptionist that if there was a problem with her calling Animal Control that she should speak with the watch commander.  (Doc. 17-21, p. 10).

24

plaintiff can satisfy his or her initial burden under the test by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the alleged retaliatory employment decision." *Id*.

As set forth above, plaintiff suffered four adverse employment actions: (1) moved from a large office to a small office; (2) suspended without pay; (3) disciplined for working unauthorized overtime; and (4) given additional job duties. Plaintiff returned from medical leave on December 14, 2009. (Doc. 16-3, p. 2:9). Plaintiff was assigned a new office and given additional job duties on the day she returned from leave, received notice of her suspension on December 28, 2009, and received a written letter of reprimand regarding the unauthorized overtime on February 4, 2010. Accordingly, each of the adverse employment actions occurred after plaintiff engaged in protected activity and within temporal proximity. *See Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 478 (Ct. App. 1992) (holding that gap of "a few months" between the protected activity and the adverse employment action is sufficient to withstand summary judgment). Thus, there is sufficient circumstantial evidence of a causal link to survive summary judgment.

The Court is unpersuaded by the City's argument that plaintiff has failed to show a causal link with regard to the office move and the additional job duties. The City argues that because plaintiff previously stated in a grievance filed with the City that she was assigned a new office and given additional job duties because of her announcement that she had cancer she cannot now argue that the retaliation occurred because she took CFRA leave. The City does not cite to any case law in support of its argument. Because the adverse employment actions occurred after plaintiff engaged in protected activity and within temporal proximity, there is sufficient circumstantial evidence of a causal link.

### 2. Legitimate, Nonretaliatory Reason & Pretext

As discussed above, "[o]nce an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action . . .the burden shifts back to the employee to prove intentional retaliation." *Faust*, 150 Cal. App. 4th at 885 (internal quotation marks omitted). This Court turns to the City's proffered reasons for the adverse actions and plaintiff's arguments regarding the reasons presented.

### a. Office Move

The day plaintiff returned from medical leave, Chief DeRosia sent an interoffice memo which directed Ms. Moniz and Mr. Aguil to relocate to plaintiff's office and plaintiff to relocate to Ms. Moniz's office. (Doc. 17-9).  The City asserts that it legitimately moved plaintiff's office because Mr. Aguil's desk was in a poorly ventilated area, that was previously used as a drug locker, that gave him headaches. (Doc. 16-6, p. 80 ¶9).  The City further points out that Mr. Aguil and Ms. Moniz were both Community Service Officers that worked Crime Prevention, so it made sense for them to share an office.  (*Id*.). Plaintiff disputes this evidence by pointing to Ms. Moniz's declaration which provides that Mr. Aguil and Chief DeRosia told Ms. Moniz that the office move was part of their plan to make plaintiff quit. (Doc. 17-24, ¶ 8).

The City objects to Ms. Moniz's statement on the ground that it contains hearsay.  The City's objection is OVERRULED as it pertains to Chief DeRosia's statement because his statement falls under the employee admission exception to hearsay.  The employee admission exception requires that the statement be offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).  Here, Ms. Moniz's declaration contains statements made by Chief DeRosia regarding the move.  Chief DeRosia's statement was made on a matter within the scope of his employment because as police chief he was the head of the police department and oversaw its operation which included the ability to assign offices.  (Doc. 16-6, ¶ 2, 9).  *Cf. Krause v. City of La Crosse*, 246 F.3d 995, 1002 (7th Cir. 2001) (concluding that assistant police chief was not acting within the scope of his employment "when he discussed the alleged motivations of members of the city's finance department in transferring Krause to the back office[;] [t]o hold otherwise would hold a city accountable for statements made by any city employee, and Rule 801(d)(2)(D) does not cast such a wide net").  Accordingly, Chief DeRosia's statement falls under the employee admission exception to hearsay.

Because the objected to portion of Ms. Moniz's declaration is admissible, there is a genuine dispute as to whether the City's reason for the office move is pretextual.

### b. Suspension

On December 28, 2009, plaintiff received a notice of proposed discipline from Chief DeRosia

which served as a written notice of the City's intent to suspend plaintiff without pay for 40 hours.[16] (Doc. 17-12).  The City maintains that it legitimately suspended plaintiff because she failed to follow Chief DeRosia's directions prior to taking planned vacation leave, failed to perform assigned duties, and failed to follow the City's Internet Use Policy.  (Doc. 17-12).  The written notice of suspension provides that plaintiff failed to follow directions prior to taking leave by failing to: (1) mail a purchase agreement and escrow instructions to a title company; (2) properly complete payroll; (3) pay bills; (4) process completed warrant requests; and (5) arrange for a co-worker to cover her duties while she was on vacation.  (Doc. 16-6, p. 79 ¶ 6; Doc. 17-12, p. 1-2).  The notice further provides that plaintiff failed to perform assigned duties by failing to mail a letter to the parole hearing board regarding the department's objection to the release of a prisoner and for failing to perform requested research associated with the letter.  (Doc. 17-12, p. 2).  The notice also provides that plaintiff failed to follow the City's Internet Use Policy by excessively using the internet to access non-work related cites.[17]  (*Id*.).

Plaintiff disputes this evidence with her own declaration.  (Doc. 17-22).  Plaintiff's declaration provides that she did not submit the full purchase agreement to the title company because she never received the purchase agreement from Chief DeRosia.  (Doc. 17-22, p. 7 ¶ 21:20).  In addition, plaintiff states that she was unable to arrange for a co-worker to cover her duties while she was on vacation because when she called the co-worker on November 23, 2009, the co-worker was unavailable, and on November 24-25, 2009, the two days prior to plaintiff's vacation leave, plaintiff was on medical leave.  (Doc. 17-22, p. 7 ¶ 21:8-9).  Finally, plaintiff asserts that she did mail the letter to the parole hearing board.  (Doc. 17-22, p. 7 ¶ 21:11).  Accordingly, there is a genuine dispute as to whether the City's proffered reasons for the suspension are pretextual.

### c. Disciplined for Working Unauthorized Overtime

On February 4, 2010, a written letter of reprimand was issued to plaintiff because she worked unauthorized overtime.  (Doc. 16-6, p. 7).  The City maintains that it legitimately issued the reprimand because plaintiff worked unauthorized overtime despite the fact that she was specifically directed not

---

[16] As discussed above, after an appeal process the suspension was reduced to two days.  (Doc. 16-3, ¶ 12).

[17] The notice of proposed discipline provides that during a 704 hour work period, plaintiff spent approximately 600 hours on the internet.  (Doc. 17-12, p. 2).

1   to.  (Doc. 16-6, p. 7; p. 80 ¶ 10).  In plaintiff's declaration she admits that when she returned from

2   leave she worked longer than forty hours per week.  (Doc. 17-22, p. 5 ¶ 16:2).  Because plaintiff was told

3   not to work overtime unless authorized and admitted to working overtime, the City has presented a

4   legitimate nonretaliatory reason for the letter of reprimand.

5       Plaintiff argues that she was forced to request overtime pay by the Head of Human Resources, Ms.

6   Barton.[18]  (Doc. 17-22, p. ¶ 16:3).  Even if plaintiff was forced to request overtime pay by Human

7   Resources, the City still had a legitimate reason for the letter of reprimand because plaintiff was told that

8   she was "not authorized to come to work early or work any overtime" without prior approval from her

9   supervisor and yet plaintiff admitted that she worked more than forty hours per week.  Accordingly, the

10  City has presented a legitimate non-retaliatory reason for the discipline plaintiff received for working

11  unauthorized overtime and plaintiff has failed to show that the City's reason is pretextual.

12              **d. Additional Job Duties**

13      The December 14, 2009, memo plaintiff received when she returned from medical leave provided

14  that she would begin taking over payroll duties.  (Doc. 17-9).  The City asserts that it legitimately

15  assigned payroll duties to plaintiff based on Chief DeRosia's decision to reconfigure the department to

16  the way it existed before he became Chief in 2006.  (Doc. 16-6, p. 79 ¶ 7-8).  Prior to DeRosia becoming

17  Chief, plaintiff's predecessor performed payroll duties for the entire department.  (Doc. 16-6, p. 79 ¶ 7).

18  Thus, in keeping with the intended job description of plaintiff's position, Chief DeRosia assigned payroll

19  duties to plaintiff.  (Doc. 17-9).

20      Plaintiff disputes this evidence by pointing to portions of Ms. Moniz's declaration.  Specifically,

21  plaintiff points to the instance in which Chief DeRosia told Ms. Moniz that he intended to make plaintiff

22  quit and the move to the smaller office was part of that plan.[19]  (Doc. 17-24).  This statement coupled

23  with statements in Ms. Romero and plaintiff's declaration show a genuine dispute as to whether the City's

24  proffered reasons for the additional job duties are pretextual.  Ms. Romero's declaration provides that

25

26      [18] The City objects to this sentence on hearsay grounds.  (Doc. 20-3, p. 8 ¶ 17).  The objection is OVERRULED
27  pursuant to the employee admission exception to hearsay.  *See* FED. R. EVID. 801(d)(2)(D).

28      [19] As discussed above, the City objects to this portion of Ms. Moniz's declaration on hearsay grounds but the
    objection is overruled.  *See supra* section (IV)(F)(2)(a).

28

before plaintiff performed payroll duties Ms. Romero, Zenaida, and Corporal Nicholson performed payroll functions together. (Doc. 17-26, ¶ 4). Plaintiff's declaration provides that she was not given any instruction on how to perform payroll and that she was supposed to perform payroll functions on her own. (Doc. 17-22, ¶ 11). The fact that Chief DeRosia stated that he intended to make plaintiff quit coupled with the fact that he assigned her payroll duties, a task previously performed by three people, without any instruction on how to perform the duties presents a genuine dispute as to whether the City's proffered reasons for the additional job duties are pretextual.

The City's motion for summary judgment on plaintiff's second claim for relief is GRANTED in part and DENIED in part.

## G. FEHA Claim: Exhaustion

The City contends that it is entitled to summary judgment on plaintiff's third claim for relief because she failed to exhaust her FEHA retaliation claim with the DFEH. Plaintiff asserts that she exhausted her retaliation claim by filing a complaint on July 11, 2012, within one year of the alleged retaliation, and received a right to sue letter on the same day. In the City's reply, it argues that because plaintiff initiated the instant lawsuit before she filed her complaint with the DFEH, she has failed to exhaust her administrative remedies and the claim should be dismissed.

"Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996). "Although California courts describe exhaustion as a jurisdictional prerequisite to suit under [the] FEHA, this label does not implicate the trial court's fundamental subject matter jurisdiction." *Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir. 2001) (citing *Keiffer v. Bechtel Corp.*, 65 Cal. App. 4th 893, 896-99 (Ct. App. 1998)). Thus, "[t]he exhaustion of an administrative remedy is a *procedural prerequisite* to an action at law, and the failure to exhaust it does not divest a trial court of *subject matter jurisdiction*." *Holland v. Union Pac. R. Co.*, 154 Cal. App. 4th 940, 946 (Ct. App. 2007) (emphasis in original). "As a result, courts can resort to equitable exceptions to this condition precedent." *Id.*

Since the antidiscrimination objectives and public policy purposes of the FEHA and Title VII of

the Civil Rights Act of 1964 are the same, California courts rely on federal decisions to interpret analogous parts of the state statute. *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal. App. 4th 846, 851 (Ct. App. 1994). Under federal law, similar to California, "the timely filing of a discrimination charge with the EEOC is not a jurisdictional prerequisite to suit in federal court" and is subject to equitable exceptions. *Wrighten v. Metro. Hosp.*, Inc., 726 F.2d 1346, 1351 n.3 (9th Cir. 1984). Thus, the Ninth Circuit has allowed a plaintiff proceeding under Title VII to cure a prematurely filed lawsuit with the subsequent receipt of a "right to sue" letter where there was no evidence that the early filing precluded the state from performing its administrative duties and the defendant did not suffer prejudice. *Id.* at 1351; *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990).

Plaintiff commenced the instant action on August 24, 2011. (Doc. 1). On July 11, 2012, she filed a complaint with the DFEH in which she alleged that she experienced retaliation by having her position eliminated on or before July 22, 2011, for "filing a complaint with the DFEH concerning a claim for a CFRA violation." (Doc. 17-18). The DFEH issued a "right to sue" letter the same day. (Doc. 17-18, p. 4). Although plaintiff initiated the lawsuit before obtaining her right to sue letter, the subsequent issuance of the letter prior to trial cured any procedural defect. *See Wrighten*, 726 F.3d at 1351. Moreover, there is no evidence that the premature filing precluded the state from performing its administrative duties, especially in light of the fact that plaintiff requested an immediate right to sue notice. In addition, "[p]remature suits are always subject to a motion to dismiss and there was none here." *Id.*

The City argues that it was prejudiced by the premature filing because the claim is frivolous and it will have a better chance of defending the claim as a stand alone cause of action in state court and a better chance at trial if the claim is excluded from the instant action. The City's arguments are unpersuasive. The inquiry at issue is whether the City was prejudiced by the premature filing not whether the City would be prejudiced by letting the claim proceed. *See Edwards*, 892 F.2d at 1445 n.1. Thus, the City has failed to show prejudice. Plaintiff may proceed with her FEHA retaliation claim.

**H. FEHA Claim: Merits**

Under the FEHA, it is unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]." Cal. Gov't

Code § 12940(h).  "California cases hold that in order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz*, 36 Cal. 4th at 1042; *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996).  "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Yanowitz*, 36 Cal. 4th at 1042.  If the employer produces a legitimate reason for the adverse action, the burden shifts back to the employee to prove that the employer's proffered reason is untrue or pretextual. *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109 (Ct. App. 2007).

### 1. Prima Facie Case

The City argues that plaintiff is unable to show a causal link between the filing of her DFEH complaint and the elimination of her position because the two events were not close in time.

A plaintiff can satisfy the causal link element of her prima facie case "by producing evidence of nothing more than the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *McRae*, 142 Cal. App. 4th at 388.  California courts have held that a gap of "a few months" between the protected activity and the adverse employment action is sufficient to withstand summary judgment.  *See Flait*, 3 Cal. App. 4th at 478 (employee terminated approximately five months after engaging in protected activity); *see also Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (holding that "three to eight months is easily within a time range that can support an inference of retaliation" in a § 1983 case); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) (recognizing that "an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory" in a First Amendment retaliation case).

Here, it is undisputed that plaintiff filed her complaint with the DFEH on January 3, 2011, and that the City eliminated its Administrative Secretary position on July 22, 2011.  (Doc. 16-3, p. 3:6-9).  Six and a half months transpired between the two events.  Because the protected activity and the adverse employment action occurred close in time, the burden shifts to the City to demonstrate a legitimate, nonretaliatory reason for eliminating the position.

**2. Legitimate, Nonretaliatory Reason**

The City presents evidence demonstrating a legitimate, nonretaliatory reason for eliminating the Administrative Secretary position in the form of Chief DeRosia's declaration. (Doc. 16-6, p. 78). The declaration provides that in approximately June 2011, City Council members Grace Vallejo and Sam Ramirez met with Chief DeRosia to discuss what positions could be eliminated from the Police Department to reduce the City's budget deficit for the 2011-2012 fiscal year. (Doc. 16-6, p. 80, ¶12). Chief DeRosia suggested eliminating the vacant Community Services Officer, Emergency Services Specialist, and Administrative Secretary positions. (*Id*.). Chief DeRosia suggested eliminating the Administrative Secretary position because "it had not been filled with a permanent employee since April 7, 2010, and the Police Department was able to continue operating without problems while the position was vacant from April 7, 2010 to June 2011." (Doc. 16-6, p. 81:5-7).

**3. Showing of Pretext**

Because the City has produced a legitimate reason for the adverse employment action, the burden shifts back to plaintiff to show that the City's reason is pretextual. A plaintiff can establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Plaintiff's evidence must be "specific" and "substantial." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). A mere refutation of the employer's proffered reason will not suffice. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002).

Here, plaintiff offers evidence to show that the City's proffered explanation is unworthy of credence. She relies on the deposition testimony of Ms. Salim to show that her position was not vacant from April 7, 2010 to June 2011 rather, her position was filled by temporary employees hired through a temp agency. (Doc. 17-21, p. 2:18-3:4). Viewing this evidence in a light most favorable to plaintiff, there exists a genuine dispute of fact. The City's stated reason for eliminating the position is budget cuts. The City's stated reason for eliminating this specific position is that the position was vacant for over a year and the department was able to operate during this vacancy without problems. Based on Ms. Salim's testimony, the position was not vacant but was filled with employees hired from a temp agency. Thus,

1   the position was not as expendable as Chief DeRosia's declaration may lead one to believe.  That being

2   said, it is possible that the temporary employees cost less than a permanent employee or that other

3   departmental employees were able to absorb the position's responsibilities.  Regardless, a genuine dispute

4   exists as to whether Chief DeRosia suggested eliminating the position because it was truly expendable.

5        The City's motion for summary judgment on plaintiff's third claim for relief is DENIED.

6   **I. Cal. Labor Code § 1102.5 Claim**

7        The City argues that it is entitled to summary judgment on plaintiff's fourth claim for relief

8   because plaintiff failed to exhaust her administrative remedies.  Plaintiff explicitly abandoned this claim

9   in her opposition.  (Doc. 17, p. 7:8-10).  Accordingly, plaintiff's fourth claim for relief is DISMISSED.[20]

10  **J. Workers' Compensation Preemption**

11       Defendants argue that they are entitled to summary judgment on their fifth affirmative defense

12  of workers' compensation preemption because workers' compensation statutes are the exclusive remedy

13  for an employee to recover damages for work related injuries and here, plaintiff claims that events related

14  to her employment led to her emotional distress claims.

15       California courts have found that "[e]motional distress caused by misconduct in employment

16  relations involving . . . promotions, demotions, criticism of work practices, [or] negotiations as to

17  grievances, is a normal part of the employment environment."  *Accardi v. Superior Court*, 17 Cal. App.

18  4th 341, 352 (Ct. App. 1993), *disapproved of on other grounds by Richards v. CH2M Hill, Inc.*, 26 Cal.

19  4th 798, 816-23 (2001).  Thus, a cause of action for such a claim is barred by the workers' compensation

20  exclusivity provisions. *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) ("The kinds of conduct at issue (e.g.,

21  discipline or criticism) are a normal part of the employment relationship.  Even if such conduct may be

22  characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation

23  exclusivity provisions.").  Workers' compensation exclusivity does not apply however, when the "injury

24  is a result of conduct, whether in the form of discharge or otherwise, not seen as reasonably coming

25

26       [20] In the City's reply it requests dismissal with prejudice.  The Court declines to dismiss this claim with prejudice given that "courts may allow a plaintiff to reallege a voluntarily withdrawn claim."  *Google, Inc. v. Affinity Engines, Inc.*,

27  2005 WL 2007888, *7 (N.D. Cal. Aug. 12, 2005); *see e.g., Southwest Forest Industries, Inc. v. Westinghouse Elec. Corp.*, 422 F.2d 1013, 1015 (9th Cir. 1970) (plaintiff "voluntarily abandoned its warranty count" after defendant moved for summary

28  judgment on that count, "[t]hen literally on the eve of trial, [] filed a motion to amend its complaint to reallege the warranty theory").

within the compensation bargain." *Id*. at 20; *see e.g.*, *Shoemaker*, 52 Cal. 3d at 23 (holding that injury resulting from a wrongful termination in violation of a whistle-blower protection statute falls outside the compensation bargain); *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1101 (1992) (extending *Shoemaker* to a case involving a common law wrongful discharge cause of action), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998); *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1155 (1998) (recognizing that sexual and racial discrimination falls outside the compensation bargain).

Plaintiff alleges that she suffered emotional distress when she was retaliated against for taking CFRA leave (second claim for relief) and when her position was eliminated because she filed a claim with the DFEH (third claim for relief). Being retaliated against for taking CFRA leave and having one's position eliminated for filing a claim with the DFEH is not conduct that is "seen as reasonably coming within the compensation bargain." *Shoemaker*, 52 Cal. 3d at 20. Thus, defendants stepped outside the bounds of the compensation bargain and engaged in conduct which cannot be considered a normal part of the employment relationship. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713 (1994). Accordingly, plaintiff's emotional distress damages claims in her second and third claims for relief are not barred by the workers' compensation exclusivity provisions.

With regard to plaintiff's FMLA claim (first claim for relief), she alleges that she experienced emotional distress when her position was eliminated. As plaintiff concedes, it is well settled that recovery for emotional distress is not available under the FMLA. *Farrell v. Tri-County Metro. Transp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008).

Defendants' request for summary judgment on its fifth affirmative defense of workers' compensation preemption is DENIED.

## V. CONCLUSION & ORDER

For the reasons discussed above, this Court:

1.  GRANTS in part, and DENIES in part defendants' request for summary judgment on plaintiff's first claim for relief;

2.  GRANTS in part, and DENIES in part the City's request for summary judgment on plaintiff's second claim for relief;

3.  DENIES the City's request for summary judgment on plaintiff's third claim for relief;

34

4.      DISMISSES plaintiff's fourth claim for relief; and

5.      DENIES defendants' request for summary judgment on their fifth affirmative defense.

IT IS SO ORDERED.

Dated:      October 12, 2012                    /s/ Lawrence J. O'Neill
b9ed48                                   UNITED STATES DISTRICT JUDGE

35